PICKERING (UNITED STATES v.). See Case No. 16,042.

## Case No. 11,123.
**PICKERSGILL et al. v. WILLIAMS.**
[30 Hunt, Mer. Mag. 710.]
District Court, S. D. New York. April 18, 1854.

SHIPPING—MASTER — REPAIRS TO SHIP—DRAFTS—
MARITIME LIEN—BOTTOMRY.

[1. Where the owner of a vessel authorizes the master to draw upon him for supplies necessary

to the vessel on a foreign cruise, he is bound to honor such drafts, even though drawn by a master other than the one designated by the owner; that master having died, and his place having been filled by another appointed by the American consul.]

[2. Where supplies were furnished upon the personal responsibility of the owner, and not upon the implied authority of the master to bind the owner, in a foreign port, a bottomry security, executed without authority, after the supplies were furnished, is void, and cannot discharge a prior valid demand.]

[This was a suit by William C. Pickersgill and others against John G. Williams for the amount of certain supplies and repairs furnished the ship Selma on the faith of letters of credit given the master by libelants at respondent's special request, who agreed to honor drafts for the amount.]

In the month of March, 1850, the respondent was the owner of the brig Selma, then lying in this port, and bound for San Francisco. Wishing to provide her captain with funds, in case he should need them on the voyage, he wrote to the libelants the following letter: "New York, March 5, 1850. Messrs. W. C. Pickersgill & Co.—Gentlemen: You will please give me letters to your friends in Rio and Valparaiso, for Capt. John J. Dean, of the brig Selma, to enable him to draw drafts on me at one day's sight, if necessary, on account of said brig, which drafts will meet with due honor on presentation, and much oblige. Your obedient servant, J. G. Williams."

Upon this request, the libelants furnished to Capt. Dean a letter of credit upon Messrs. Rostern, Dutton & Co., at Rio, and the brig soon after sailed. Early in May she arrived at Rio in a damaged condition. Capt. Dean presented his letter of credit, and requested that the necessary supplies and repairs should be furnished, which was done. After the repairs were commenced, Capt Dean died, never having drawn the drafts. The vessel was for a time under the charge of the mate, and afterwards a new master—Capt. Story—was appointed by the American consul, approved by Rostern, Dutton & Co. The repairs were prosecuted meanwhile, and, when completed, drafts were drawn by Capt. Story on the respondent for the amount, being between seven and eight thousand dollars, which he refused to pay, whereupon this suit was brought. The vessel sailed from Rio in August. She afterwards put into Valparaiso, in need of further repairs, where she was sold with her cargo by her master, and the avails of such sale, or a portion of them, were sent by him to the respondent, who received them.

The respondent claims that this letter was merely a special application to authorize Capt. Dean, and no one else, to draw drafts. He also claims that, on hearing that the brig had gone into Rio damaged, he made an abandonment of her to the underwriters on the 19th day of July, which abandonment took effect from the time the cause of abandonment existed; and that he was not, therefore, the owner of the brig when the repairs and supplies were furnished, and was not, therefore, liable for them. He did not, however, pay over or tender to the insurance company the avails of the sale of the brig received by him. He also claims that he is not liable to pay the claims, because, on the 30th of August, the then master executed a bottomry obligation for them, by which the original demand was merged. It was not, however, under seal, and was expressly stated to be a collateral security. He also claims that this security was recognized by the parties as a valid bottomry obligation by a subsequent agreement, dated December 27, 1850, entered into between the libelants and the owners of the cargo of the brig, the respondent being one of them. The agreement provided that nothing in it should affect the bottomry obligation, or any rights which the libelants might otherwise have against the owners of the vessel, and the respondent promised that, if the bottomry obligation should not be a full security to the libelants, he would pay them the balance that might be due.

HELD BY THE COURT (INGERSOLL, District Judge): That the promise, in the letter of March 5th, to accept drafts, was only secondary, the object of the letter being to secure funds for the necessities of the vessel, and that whatever repairs and supplies were furnished at Rio to the brig, were to be paid for by the respondent; such payment not depending upon Capt. Dean's drawing drafts, as a condition precedent. That the supplies were not furnished upon the implied authority of the master to bind the owner, whoever he may be, when in a foreign port, but upon the personal responsibility and at the special request of the respondents; that it is not, therefore, necessary to inquire whether, by his abandonment, he ceased to be the owner of the brig, although his retaining the avails of the sale of the brig would render that seriously questionable. That the supplies being furnished on the personal responsibility of the respondent, without any agreement for a bottomry security, that security, executed after they were furnished, was without authority and void, binding neither the ship nor the respondent, and no prior valid demand could be merged in or discharged by it. That, being not voidable, but void, it could not be made valid by any recognition of it as valid. That, moreover, the master of the brig, not being a party to the agreement of December 27, could not ratify the bottomry security which he executed, while the respondent in that agreement says that he was not the owner of the brig, and his ratification would not bind the brig, if that was so.

Decree, therefore, for libelants for the amount of the repairs and supplies furnished to the brig at Rio. with a reference to a commissioner to ascertain that amount.